IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | |
|---|---|
| CAMDEN BRODDLE, *individually, and on behalf of others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>APOLLO INTERACTIVE INSURANCE SOLUTIONS, LLC,<br><br>Serve registered agent at:<br>Paracorp Incorporated<br>222 E. Dunklin, Suite 102<br>Jefferson City, MO 65101<br><br>Defendant. | Case No.: 4:24-cv-582<br><br><br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Camden Broddle ("Broddle"), individually, and on behalf of all others similarly situated, and for his Class Action Complaint against Defendant Apollo Interactive Insurance Solutions, LLC ("Defendant"), states:

### BACKGROUND

1. This case is about stopping incessant telemarketers like Defendant from sending unwanted text messages to the cell phones of Broddle and likely thousands of other persons.

2. Broddle brings this class action lawsuit against Defendant for sending improper telemarketing solicitation text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

1

4. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. Defendant sent telemarketing text messages to Broddle and the putative class members despite Broddle's and the putative class members phone numbers being registered on the National Do-Not-Call Registry ("DNC List").

6. In the first eight months of 2024 alone, approximately 34.3 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Sept. 4, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7. Broddle seeks to represent putative class members who received two or more telemarketing text messages within a 12-month period from Defendant after previously registering their numbers on the DNC List.

**PARTIES AND BACKGROUND ON THE PARTIES**

8. Broddle is an individual who at all times material to this Complaint has resided in Kansas City, Missouri, and has at all time material to this Complaint been a citizen of the State of Missouri.

9. Defendant is a California limited liability company who has been registered as a foreign limited liability company in the State of Missouri and has been in good standing to transact

2

business in California, Missouri, and throughout the United States at all times material to this Complaint.

10. Defendant is a marketing company that according to its LinkedIn page, "spends our own money to find potential customers."

11. Defendant attempts to find potential customers for its clients in a variety of industries, including, but not limited to the area of health insurance and Medicare.

12. One of Defendant's websites is www.apollointeractive.com.

13. Defendant's website states, "In the rapidly evolving healthcare landscape, we help insurers, brokers, and wellness brands reach their target audience effectively, ensuring compliance and generating policies for both the U64 and Medicare markets." The website then includes a logo that states, "MedicareInfo, A Trusted Non-Government Entity."

14. Defendant's website further states, "Whether you're looking to generate leads, increase conversions, or optimize your marketing efforts, Apollo Interactive is here to help. . . . Contact us today to learn more about how we can tailor our lead generation solutions to meet your specific needs and propel your business toward success."

15. Defendant's website, as of the date of this filing, has a section through which potential job applicants can apply for positions with Defendant.

16. As of the date of this filing, Defendant's website is seeking applicants for the job of "email and SMS marketing specialist."

17. SMS stands for "short message service" and is a common form of text messaging which limits the size of a text message, generally to 160 characters or less.

18. Defendant is licensed by the Missouri Department of Insurance as a "Business Entity Producer." Defendant's license number is 3001396163, and was first active on July 16,

2021, and remains active through July 16, 2025.

19. The "Insurance Producer" responsible with Defendant's licensure is Garegin Baghdasaryan whose license number in the State of Missouri is 3001327800.

20. Defendant markets its products and services and its clients' products and services, in part, through telemarketing such as placing text messages directly to consumers and/or having such text messages placed on its behalf.

**JURISDICTION AND VENUE**

21. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

22. This Court has jurisdiction over Defendant because, among other things, Defendant: transacts business in Missouri, purposefully directed its marketing efforts to Broddle in Missouri, is licensed to sell insurance by the Missouri Department of Insurance, regularly markets its and its clients' products and services in the State of Missouri, and otherwise has sufficient contacts with the State of Missouri.

23. The harm was sustained by Broddle in this District and Broddle has resided in this District at all times material to this Complaint.

24. For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## DEFENDANT'S INCESSANT TEXT MESSAGES

25. At all times relevant to this Complaint, Broddle was the owner of a phone bearing the phone number 316-XXX-5487.

26. Broddle placed his phone number was placed on the national Do Not Call Registry ("DNC List") on January 8, 2021, for the purpose of being left alone by telemarketers.

27. The account for Broddle's phone is not held in the name of a business.

28. Broddle uses his phone primarily for personal and household purposes, including communicating with friends and family members.

29. Broddle did not inquire of Defendant's services or request Defendant's services.

30. Broddle did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to send him text messages.

31. Broddle never provided his personal information on a website maintained by Defendant or any of Defendant's marketing partners.

32. On or about March 4, 2024, Broddle began receiving unwanted and unsolicited SMS text messages on his cell phone from or on behalf of Defendant.

33. The first set of text messages sent by or on behalf of Defendant appeared on Broddle's phone as having originated from phone number 1-888-550-2127.

34. The March 4, 2024, text message that was sent to Broddle by or on behalf of Defendant, stated: "Notice: Summer, Call 877-672-3181 Now To Review Your 2024 Health Coverage Options & Lock-In Your Plan STOP to optout."

35. On March 14, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, Call 888-340-3259 Today To Review Your 2024 Health Coverage Options & Lock-In Your Plan STOP to optout."

36. On April 5, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, Call 877-518-3206 Today To Review Your 2024 Health Coverage Options & Lock-In Your Plan Before April Ends STOP to optout."

37. On April 26, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, April Ends in 4 Days. Lock-In Your Plan For 2024 Before The Month Ends. Call Now: (XXX) XXX-XXXX Reply STOP to optout."

38. On May 6, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, Call 888-719-0822 Today To Review Your 2024 Health Coverage Options & Lock-In Your Plan This Month Reply STOP to optout." This was the most recent text message that Broddle received that appeared on his phone as having originated from phone number 1-888-550-5127.

39. Broddle has never used the alias "Summer," is not related to any person named "Summer," and does not interact with any person named "Summer."

40. Defendant or someone acting on Defendant's behalf also sent Broddle a series of text messages that appeared on Broddle's phone as having originated from phone number 888-698-6422.

41. On June 27, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, Call 877-415-0196 Today To Review Your 2024 Health Coverage Options & Lock-In Your Plan Before June Ends Rply STOP to stop."

42. On July 9, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, review your health coverage options today. Visit: Insure.co/12health?elid=241B635J326C912D Rply STOP to stop."

43. On July 18, 2024, Broddle received a text message from or on behalf of Defendant,

stating, "July Notice: Summer, review your health coverage options today. Visit: Insure.co/44health?elid=241B635J326C912D Rply STOP to stop."

44. On July 26, 2024, Broddle received a text message from or on behalf of Defendant, stating, "Summer, review your health coverage options before July ends. Visit: Insure.co/73health?elid=241B635J326C912D Rply STOP to stop." This was the most recent text message that Broddle received that appeared on Broddle's phone as having originated from phone number 1-888-698-6422.

45. Defendant or someone acting on Defendant's behalf also sent Broddle a series of text messages originating from short code 51831.

46. On July 26, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan and Medicaid. Visit: Insure.co/743med?elid=241B635J326C912D Text STOP to optout."

47. On August 2, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan and Medicaid. Visit: Insure.co/910med?elid=241B635J326C912D Text STOP to optout."

48. On August 9, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan and Medicaid. Visit: Insure.co/1076med?elid=241B635J326C912D Text STOP to optout."

49. On August 16, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan and Medicaid. Visit: Insure.co/1253med?elid=241B635J326C912D Text STOP to optout."

50. On August 23, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan

and Medicaid. Visit: Insure.co/1419med?elid=241B635J326C912D Text STOP to optout."

51. On August 30, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may be eligible for a Medicare Advantage plan and Medicaid. Visit: Insure.co/1591med?elid=241B635J326C912D Text STOP to optout." This was the most recent text message that Broddle received that appeared as having originated from short code 51831.

52. Defendant or someone acting on Defendant's behalf also sent Broddle a series of text messages that appeared on Broddle's phone as having originated from phone number 888-990-5261.

53. On February 16, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 888-686-0279 STOP to optout."

54. On February 26, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-472-1992 STOP to optout."

55. On March 7, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 888-356-4805 STOP to optout."

56. On March 28, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 888-862-4192 STOP to optout."

57. On April 3, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid.

Call a licensed insurance agent: 888-986-4201 STOP to optout."

58. On April 15, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-359-3805 STOP to optout."

59. On April 23, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-689-1685 STOP to optout."

60. On May 17, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-781-0568 STOP to optout."

61. On May 28, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-668-6038 STOP to optout."

62. On June 5, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 888-271-5247 STOP to optout."

63. On June 10, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 877-324-1566 STOP to optout."

64. On June 18, 2024, Broddle received a text message from or on behalf of Defendant, stating, "MedicareInfo: Summer, you may qualify for a Medicare Advantage plan & Medicaid. Call a licensed insurance agent: 888-601-1148 STOP to optout."

65. On information and belief, if the recipient of the text message clicks the links

contained in text messages, they are directed to the website, www.medicareinfo.org.

66. The www.medicareinfo.org website states that the "site is operated in partnership with Apollo Interactive Insurance Solutions, LLC, a licensed insurance agency, operating through its designated agent, Garegin Baghdasryan, only where licensed and appointed. . . ."

67. The www.medicareinfo.org website states that Defendant connects "individuals with insurance providers and other affiliates . . . to give you, the consumer, an opportunity to get information about insurance and get connected with licensed insurance agents."

68. The www.medicareinfo.org website includes a logo that states, "MedicareInfo, A Trusted Non-Government Entity."

69. The www.medicareinfo.org website also states that "our goal is to help our clients with the process of purchasing Medicare Health Insurance" and includes an option for a consumer to get quotes regarding such policies.

70. The www.medicareinfo.org website also contains a link to the licenses held by Defendant and the license number in the relevant state. The website identifies Missouri and a license number in Missouri of 3001327800.

71. Garegin Baghdasryan's LinkedIn profile identifies him as the "Media Director" for Defendant.

72. One of Defendant's websites, www.apollointeractive.com, includes Mr. Baghdasryan's picture and identifies him as the "Media Director."

73. On information and belief, the purpose of each of Defendant's text messages sent to Broddle and the putative class members was to attempt to get Broddle and the putative class members to purchase insurance products or services from Defendant or Defendant's clients.

74. Broddle and the putative class members did not provide Defendant "prior express

written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to send text messages to their phones.

75. On information and belief, Defendant knew that it should not have sent text messages to Broddle and the putative class members, yet incessantly sent them text messages.

76. The text messages Defendant placed to Broddle and the putative class members were harassing, irritating, invasive and annoying.

77. Defendant's text messages invaded Broddle's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing text messages.

78. Defendant's text messages caused Broddle and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted text messages.

## DIRECT AND VICARIOUS LIABILITY

79. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

80. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

81. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

82. If Defendant directly sent the text messages to Broddle, Defendant is directly liable for those text messages.

83. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the links in the text messages only led back to Defendant and no other entity.

84. To the extent a third party sent the text messages at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

85. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper text messages.

86. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

87. For the counts identified below, if Defendant directly sent the text messages, it is directly liable. In the alternative, to the extent any text messages were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful text messages.

## CLASS ALLEGATIONS

88. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Broddle brings this Complaint as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

89. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Broddle seeks to represent the following class:

> **DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) to whom Defendant (or someone acting on its behalf) sent two or more text messages during a 12-month period; (2) where the text messages were made for solicitation purposes, (3) whose number was registered on the DNC List for more than 31 days at the time the texts were sent; (4) where the phone number to which the texts were sent was registered to an individual, rather than a business.

90. Broddle reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

91. The members of the proposed class are so numerous that joinder of all members is impracticable. Broddle reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

92. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

93. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether the text messages at issue qualify as "telephone solicitations" for the purposes of 47 U.S.C. § 227(c);

b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA;

c. Whether an agency relationship exists between Defendant and anyone placing such text messages on its behalf;

d. Whether Defendant's manner and system of obtaining consumer "consent" was legally deficient;

e. Whether Defendant implemented policies and procedures for TCPA compliance that would warrant the "good faith safe harbor" prescribed by 47 C.F.R. § 64.1200(c);

f. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

g. Whether Broddle and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

94. Broddle's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

95. Broddle and his counsel will fairly and adequately protect the interests of the members of the proposed class. Broddle's interests do not conflict with the interests of the proposed class he seeks to represent. Broddle has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

96. Broddle's counsel will vigorously litigate this case as a class action, and Broddle and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

97. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing

a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

98. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

99. Questions of law and fact, particularly the propriety of sending text messages to person on the DNC List, predominate over questions affecting only individual members.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.*
### (National DNC List Violations – Individually, and on Behalf of The Putative Class)

100. Broddle incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

101. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

102. The penalty for each call placed in violation of the TCPA's restrictions on sending text messages to phone numbers registered on the DNC List is up to $500 per text message and up to $1,500 per text message if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

103. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting text messages to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

104. By placing text messages to Broddle and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

105. Defendant and/or those acting on their behalf knew or should have known that Broddle's and the putative class members' phone numbers were registered on the DNC List.

106. Defendant and/or those acting on their behalf willfully violated the TCPA when send the text messages at issue to Broddle's and the putative class members' cell phones.

107. Broddle and the putative class members are entitled to damages of up to $500.00 per violation for each text message sent by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Camden Broddle, individually, and on behalf of all others similarly situated, requests the Court enter judgment in his favor and against Defendant Apollo Interactive Insurance Solutions, LLC and grant the following relief:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Broddle as the class representative;

B. Enter an order appointing Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Broddle and the DNC List Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Broddle and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Broddle and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Broddle and the Class for all costs; and,

G. Award Broddle and the Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Camden Broddle demands a jury trial.

                        BUTSCH ROBERTS & ASSOCIATES LLC

                        */s/ Christopher E. Roberts*
                        Christopher E. Roberts #61895MO
                        7777 Bonhomme Avenue, Suite 1300
                        Clayton, MO 63105
                        Telephone: (314) 863-5700
                        croberts@butschroberts.com

                        *Attorney for Plaintiff*